**BRAFMAN & ASSOCIATES, P.C.**

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: BBRAFMAN@BRAFLAW.COM

BENJAMIN BRAFMAN

ANDREA ZELLAN
KAREN A. NEWIRTH
OSNAT LUPESKO-PERSKY

MARK M. BAKER
OF COUNSEL

MARC AGNIFILO
OF COUNSEL
ADMITTED IN N.Y. AND N.J.

FAXED TO COUNSEL

November 17, 2011

**BY FACSIMILE**
Honorable Loretta A. Preska
Chief Judge, Southern District of New York
United States District Court
500 Pearl Street
New York, NY 10007

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/18/11
```

Re:  **United States v. Zeev Tambor**
     **(97 CR 00018) (LAP)**

Dear Judge Preska,

    We write on behalf of our client, Zeev Tambor, the defendant in the above-captioned matter, to respectfully request early termination of his supervised release. We have contacted the Government and Mr. Tambor's Probation Officer, Lori Jones-Martin, who have declined to take a position on this application.[1]

    Mr. Tambor was released from the custody of the Bureau of Prisons on November 17, 2010, following the completion of his thirty month sentence of incarceration; consistent with his sentence, he has now completed one year of his two year term of supervised release. The extraordinary circumstances surrounding his voluntary surrender to the United States in order to

---

[1] Probation Officer Lori Jones-Martin indicated that although Mr. Tambor is a model supervisee, Probation Department policy dictates that she is unable to consent to early termination of supervised release based solely on the exemplary conduct of a supervisee. Officer Jones-Martin is available to answer questions pertaining to Mr. Tambor's conduct while on supervised release if the Court requires further inquiry.

## BRAFMAN & ASSOCIATES, P.C.

answer for this nearly two decade old crime, when coupled with his flawless post-conviction conduct, warrant the requested relief in the interests of justice.

By way of background, a criminal complaint was filed against Mr. Tambor, a dual United States and Israeli citizen, in 1992 after he had already returned to Israel with his family. A one-count indictment charging conspiracy to launder money, in violation of 18 U.S.C. 1956(a)(3)(B) was filed in 1997 (the "Indictment"), while Mr. Tambor was still living in Israel. The United States never sought to extradite Mr. Tambor, despite the fact that his whereabouts were well known, as he filed his annual tax returns for every year that he lived in Israel, providing his Israeli home address.

In late 2007, Mr. Tambor retained our firm for the purpose of returning to the United States and pleading guilty to the outstanding charge. We negotiated, on Mr. Tambor's behalf, a plea agreement and effectuated Mr. Tambor's voluntary return. On March 7, 2008, shortly after his return to the United States, Mr. Tambor pled guilty to Count One of the Indictment. On July 10, 2008, Mr. Tambor was sentenced to a 30 month term of imprisonment, followed by two years' supervised release. Mr. Tambor completed his term of imprisonment, which was followed by halfway house placement and home incarceration on November 17, 2010. Mr. Tambor also paid all of his financial fines and penalties promptly after sentencing.

Mr. Tambor is sixty-two years old and has four adult children. Two of those children live in Israel, where Mr. Tambor and his wife resided continuously for the sixteen years prior to his return to the United States to face the instant charges. It is because of Mr. Tambor's desire to return to his family and to his home in Israel that we now request early termination of supervised release.

Modifications of the conditions of a term of supervised release are governed by 18 U.S.C. § 3583(e). Pursuant to § 3583(e), a district court, "after considering the factors set forth in section 3553(a)," may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 USC § 3583(e)(1). The decision to grant early termination rests within the discretion of the district court. *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997).

In *United States v. Harris*, 689 F. Supp. 2d 692, 695 (2010), the Government opposed a defendant's request for early termination of supervised release because, if granted, the defendant would have no longer needed to comply with the condition requiring restitution payments. Judge Haight acknowledged, "[t]he question posed by 18 U.S.C. § 3583(e)(1) is whether in these circumstances, an early termination of Harris's supervised release would be 'in the interests of justice'". *Id.* Judge Haight continued:

> There are two possible resolutions to this case. The Court can terminate Harris's supervised release, do away with crippling obstacles to his professional advancement, and make straight his path to rehabilitation and redemption. Or the Court can require Harris to serve his full term of supervised release, leave him blocked and at risk in his employment, and confer no benefit upon the victimized banks. Which resolution is 'in the interest of

2

**BRAFMAN & ASSOCIATES, P.C.**

justice?' The question is not close. Justice requires the termination of Harris's supervised release.

*Id.* at 696.

As Mr. Tambor's post conviction conduct is beyond reproach, the same question Judge Haight considered in *Harris* must be answered in the instant matter: whether in these circumstances an early termination of Zeev Tambor's supervised release would be in the "interests of justice." We submit that the answer must also be the same: Justice requires the termination of supervised release. Here, the Government is not opposing Mr. Tambor's application, there is no restitution owed to any victims, and the stakes of keeping him on supervised release are much higher than placing his employment status at risk as Mr. Tambor is 62 years old and has significant health concerns.[2]

Mr. Tambor, along with his wife who has stayed in New York beside her husband as he answered for his conduct, simply wish to live what is left of their lives in their home, with their children and in their country.

In many respects, Zeev Tambor has served two sentences—the 16 years that he lived with criminal charges lodged against him in his former country and the 26 months he was confined to a prison cell completely separated from the lives of those he loves. He has missed weddings, births, deaths, and countless other milestones in his life and the lives of loved ones because of a single aberrant stray from an otherwise law abiding and productive life. As demonstrated by his decision to voluntarily surrender, Zeev Tambor understands the interests of justice better than anyone counsel has ever had the privilege of representing. At this time in his life, he belongs at his home in Israel, and accordingly, we respectfully request early termination of his supervised release so he may return home.

We thank the Court in advance for its courtesy in this and all other matters, and stand ready to assist should the Court have any questions.

*[handwritten: Termination of supervised release is effective immediately]*

Sincerely,

Benjamin Brafman

SO ORDERED

*[signature]*
LORETTA A. PRESKA
UNITED STATES DISTRICT JUDGE

*[handwritten date: November 18, 2011]*

cc: AUSA Rebecca Ricigliano (by email)
Probation Officer Lori Jones-Martin (by email)

---

[2] As corroborated in the PSR dated May 30, 2008, Mr. Tambor suffered a major heart attack in 2005 which caused significant and permanent cardiac damage. In addition, Mr. Tambor has had two arterial stents implanted in order to avoid further heart blockage.

3